**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **RODNEY J. MURPHY,**        ) | |
|      **Plaintiff,**        ) | |
|                        ) | |
| **v.**                                ) | **CIVIL ACTION NO. 2:20-00183-KD-N** |
|                        ) | |
| **THE STATE OF ALABAMA,** *in the*    ) | |
| *Official and individual capacity,*    ) | |
| *et al.,*                            ) | |
|      **Defendants.**        ) | |

## REPORT AND RECOMMENDATION

This civil action is before the Court *sua sponte* on review of the complaint (Doc. 1, as amended by Doc. 3) filed by Rodney J. Murphy, who is proceeding without counsel (*pro se*) and *in forma pauperis*. Because Murphy was granted leave to proceed in this action without prepayment of fees under 28 U.S.C. § 1915, his complaint is subject to § 1915(e)(2), which provides, in relevant part, as follows: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that … the action or appeal— (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

### I.     *Summary of the Complaint*

Murphy initiated this action on March 23, 2020, asserting claims against the State of Alabama; the Circuit Court of Marengo County, Alabama; Marengo County

Circuit Judge Vincent K. Deas (incorrectly named in the complaint as "Judge Zince Deas"); Marengo County Circuit Court Clerk Kenny Freeman; and Christie Thomas. Per the complaint's well-pleaded allegations, which the undersigned must accept as true at this stage, Murphy sent three letters to Thomas on February 5, 2020, and an email on February 20, 2020. The communications concerned Thomas's twin daughters, who Murphy had "not seen or heard from in four years[,]" and of whom Murphy claims to be the father. Thomas "immediately went to Marengo County Circuit Court and filed a protective order, insisting her life was in danger." Thomas provided "a fabricated statement" under oath on February 26, 2020, suggesting that Murphy had threatened her. The circuit court accepted the statement at "face value," and Clerk of Court Freeman "was second to agree with the inappropriate action, with moral turpitude."[1] "The information was promptly transferred to the Marengo County Sheriffs' office, faxed over to Montgomery County Sheriffs' office and delivered to" Murphy by a deputy sheriff.[2] Murphy asserts federal causes of action

---

[1] Murphy has attached a copy of Thomas's statement to his complaint, which was provided on an Alabama form Petition for Protection from Abuse (Doc. 1, PageID.6-10). *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The petition is signed by "V D" – presumably, Judge Vincent Deas – with the notation "set for hearing April 7, 2020 at 10:30 AM," and is stamped as filed February 27, 2020, with Clerk of Court Freeman.

[2] Murphy submitted a filing on April 20, 2020, asserting additional claims against Thomas (Doc. 3), which the undersigned has liberally construed as an amendment to the complaint made as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B). Attached to that filing is an order from Judge Deas entered April 8, 2020, restraining and enjoining Murphy and Thomas from having any physical contact with each other. (*Id.*, PageID.34).

under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as state law causes of action. In his prayer for relief, he asks that the State of Alabama be ordered to grant him paternity testing for the twin daughters, and to "[c]ease and desist any and all protective orders and conditions applied against" Murphy. Murphy requests damages against all other defendants, as well as unspecified "[s]tatutory and injunctive relief…"

## II. *Analysis*

### A. Eleventh Amendment Immunity

Eleventh Amendment immunity bars suits by private individuals in federal court against a state unless the state has consented to be sued or has waived its immunity or Congress has abrogated the states' immunity. *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363–64, 121 S. Ct. 955, 962, 148 L.Ed.2d 866 (2001); *Cross v. Ala. Dep't of Mental Health & Mental Retardation,* 49 F.3d 1490, 1502 (11th Cir. 1995). "This bar exists whether the relief sought is legal or equitable." *Papasan v. Allain,* 478 U.S. 265, 276, 106 S. Ct. 2932, 2939, 92 L. Ed. 2d 209 (1986). The Eleventh Amendment applies when "the State or one of its agencies or departments is named as the defendant...." *Id.* (quotation marks omitted). That is, Eleventh Amendment immunity "is available 'only' to states and arms of the states." *Walker v. Jefferson Cty. Bd. of Educ.,* 771 F.3d 748, 751 (11th Cir. 2014).

…

Whether an entity is an "arm of the state" is determined by considering four factors: (1) how the state law defines the entity; (2) the degree of state control over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. *Walker,* 771 F.3d at 751–53.[3]

---

3     In *Walker*, the Eleventh Circuit made clear that this multifactor test for Eleventh Amendment immunity, which was first articulated as a three-factor test in the panel decision *Stewart v. Baldwin County Board of Education*, 908 F.2d 1499, 1511 (11th Cir. 1990), and later refined into a four-factor test in the *en banc* decision *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc), "remains the law of

*Nichols v. Ala. State Bar*, 815 F.3d 726, 731-32 (11th Cir. 2016) (per curiam) (footnote omitted).

"Sovereign immunity has also been extended to state officials, acting in their official capacity, where an agency or individual may 'be treated as an arm of the State partaking of the Eleventh Amendment Immunity.' " *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016) (per curiam) (quoting *Mt. Healthy City Sch. Dist. Bd. Of Educ.*

---

the circuit." 771 F.3d at 752 – 53.

As noted by the *Walker* court, in *Versiglio v. Board of Dental Examiners of Alabama*, 686 F.3d 1290 (11th Cir. 2012), a panel of the Eleventh Circuit Court of Appeals held: "Whether an agency qualifies as an arm of the state is a federal question with a federal standard, but whether that standard is met will be determined by carefully reviewing how the agency is defined by state law… In conducting our analysis, this court 'has stated the most important factor is how the entity has been treated by the state courts.' " 686 F.3d at 1291-92 (quoting *Tuveson v. Fla. Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir. 1984) (citing *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22 (5th Cir. 1980) (stating that whether an entity is a " 'second self' of the state or a 'separate and distinct' entity subject to suit 'must be determined by the law of the state' " (citation omitted)))). *Accord Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (per curiam) (same, quoting *Versiglio*).

*Walker* rejected arguments that the *Versiglio* decision "can be read as collapsing the entire Eleventh Amendment multi-factor test into a single dispositive inquiry—whether the state courts grant state law immunity to the entity for suits based on state law—" finding that such a reading "conflicts not only with our 1990 decision *Stewart*, but also with our 2003 en banc decision in *Manders*." 771 F.3d at 754 (declining to read *Versiglio* "in a way which violates our prior panel precedent rule and creates interpretive problems for panels in the future"). *Walker* reaffirmed that "how the state courts treat an entity is only one part of the first factor of the *Stewart* and *Manders* analysis. Within the first factor the court also weighs how state statutes treat the particular entity." *Id.* (quotation omitted). *Walker* also noted that, "[t]o the extent that *Huber* held that Eleventh Amendment immunity is governed solely by how state law characterizes an entity, it has been superseded by the later en banc decision in *Manders*, 338 F.3d at 1309 (setting out four-part Eleventh Amendment immunity test)." *Id.* n.4.

*v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)). This is because "official capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent,' and a victory against a named individual in an official capacity suit is 'a victory against the entity that employs him.' " *Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993) (per curiam) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985)).

Murphy's complaint alleges claims for violation of federal rights under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as state law claims. "The state of Alabama has not waived its [Eleventh Amendment] immunity … [T]he Alabama Constitution of 1901 expressly states that 'the State of Alabama shall never be made a defendant in any court of law or equity.' " *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990). *See also Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016) (per curiam) ("[T]he State of Alabama has not agreed to be sued for violations of an individual's civil rights." (citing Ala. Const. art. I, § 15 ("[T]he State of Alabama shall never be made defendant in any court of law or equity."); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057–58, 57 L. Ed. 2d 1114 (1978) (per curiam)). Moreover "Congress has not abrogated eleventh amendment immunity in section 1983 cases[,]" *Carr*, 916 F.2d at 1525, in § 1981 cases, *see Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1068 (5th Cir. Unit A June 26, 1981)[4] ("the eleventh

---

[4] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.' " *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The

amendment barred the Section 1981 claim against the hospital, a state entity, in federal court"), in § 1985 cases, *see Fincher v. State of Fla. Dep't of Labor & Employment Sec. Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986) (per curiam) ("We find no express congressional abrogation of the state's Eleventh Amendment immunity with respect to 42 U.S.C. § 1985 actions."), or in § 1986 cases. *See Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 975 (9th Cir. 1994) (holding that the Eleventh Amendment barred § 1986 claims against state agency); *Coffin v. S.C. Dep't of Soc. Servs.*, 562 F. Supp. 579, 585 (D.S.C. 1983) (same). Accordingly, the State of Alabama is immune from Murphy's §§ 1983, 1985, and 1986 claims, as well as his state law claims.

The undersigned further finds that the Marengo County Circuit Court is an "arm of the state" of Alabama, and therefore entitled to share in its immunity to those claims, as are Circuit Judge Deas and Clerk of Court Freeman in their official capacities. State circuit courts are part of a "unified judicial system" in which "the judicial power of the state is vested exclusively…" Ala. Code § 12-1-2. The Alabama legislature generally controls funding of the circuit courts, *see id.* ("Except as otherwise provided by law, no moneys provided for under the provisions of this title shall be expended unless duly appropriated by the Legislature of the State of Alabama."), and defines what cases they can hear. *See* Ala. Code § 12-11-30.

---

Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

Accordingly, all of Murphy's federal and state law claims against the State of Alabama, Marengo County Circuit Court, and Judge Deas and Clerk of Court Freeman in their official capacities, are due to be **DISMISSED without prejudice** under § 1915(e)(2)(B)(iii) to the extent they seek monetary relief against those defendants, who are immune from such relief under the Eleventh Amendment. Murphy's federal and state law claims against the State of Alabama, from which Murphy only seeks equitable relief, and his federal and state law claims against the Marengo County Circuit Court requesting equitable relief, are due to be **DISMISSED without prejudice** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted, as those defendants are immune from such relief under the Eleventh Amendment.

### B. *Ex parte Young* Doctrine

"Under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), … there is a long and well-recognized exception to [Eleventh Amendment immunity] for suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). "The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law." *Id.* However, "the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Id.* at 1337 (citation omitted).

Here, nothing in Murphy's complaint indicates that he is seeking prospective equitable relief against Judge Deas and/or Clerk of Court Freeman in their official capacities. Rather, all of his claim seek to adjudicate the legality of past conduct. Accordingly, are due to be **DISMISSED without prejudice** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted, as those defendants are immune from such relief under the Eleventh Amendment.

## C.     Absolute Judicial Immunity

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the ' "clear absence of all jurisdiction." ' *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); *Simmons v. Conger*, 86 F.3d 1080, 1084–85 (11th Cir. 1996). This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000).[5] Additionally, injunctive relief under § 1983 is not available "against a judicial officer for an act or omission taken in such officer's judicial capacity… unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy

---

[5] However, "judicial immunity did not protect a state judge from claims for injunctive relief in a § 1983 action." *Bolin*, 225 F.3d at 1240.

involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (per curiam).

Here, Judge Deas was indisputably acting in his judicial capacity, and well within his jurisdiction, when he signed Thomas's Petition for Protection from Abuse and set it for a hearing. *See* Ala. Code §§ 30-5-3 (granting circuit court judges jurisdiction to entertain petitions for protection orders), 30-5-6(a) (providing for hearings on petitions for protection orders). [6] Moreover, nothing in Murphy's complaint indicates that a declaratory decree was violated or that declaratory relief is unavailable. Accordingly, all claims against Judge Deas in his individual capacity are due to be **DISMISSED with prejudice** under § 1915(e)(2)(B)(iii).

### D.  Section 1981 Claims

"Title 42 U.S.C. § 1981 creates a federal right of action for victims of certain types of racial discrimination." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1308 (11th Cir. 2010). The Eleventh Circuit Court of Appeals has "held that § 1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009)

---

[6] Murphy suggests Judge Deas "over reached [his] jurisdictional boundary, due to the fact [Murphy] has never visited Marengo County." (Doc. 1, PageID.3). However, a petition for a protection order can filed where the petitioner "is temporarily located if he or she has left his or her residence to avoid further abuse[,]" Ala. Code § 30-5-3(c)(2), and Thomas's petition stated that she was temporarily located in Marengo County due to alleged abuse. (*See* Doc. 1, PageID.7).

(citing *Butts v. County of Volusia*, 222 F.3d 891, 894–95 (11th Cir. 2000)). Accordingly, Murphy cannot pursue § 1981 claims against the State of Alabama, the Marengo County Circuit Court, Judge Deas, and Clerk of Court Freeman.

Thomas is not a state actor. However, "[t]o state a claim for non-employment discrimination under § 1981, a plaintiff must allege (1) he is a member of a racial minority, (2) the defendant intended to *racially discriminate* against him, and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Jimenez*, 596 F.3d at 1308 (emphasis added). Nothing in Murphy's complaint indicates that Thomas, or indeed any defendant, intended to discriminate against him on the basis of his race. Accordingly, and as an alternative to those defendants who are immune under absolute judicial immunity and/or the Eleventh Amendment, the § 1981 claims against all of the defendants are due to be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### E.    Section 1983 Claims against Thomas

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' … [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citations and some quotations omitted). *See also*

*Duty Free Americas*, 797 F.3d at 1262 (Courts " 'afford no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action.' " (quoting *Franklin v. Curry*, 738 F.3d 1246, 1248 n. 1 (11th Cir. 2013) (per curiam))).

> "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In other words, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotation marks omitted). Put another way, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Moreover, " 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.' " *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S at 678). *Iqbal* "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint

that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Importantly, … courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 679 (quoting *Twombly,* 550 U.S. at 567)).

"In order to prevail on an action under § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

> "Only in rare circumstances can a private party be viewed as a '[S]tate actor' for section 1983 purposes." *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992). Indeed, to hold that private parties … are State actors, [a] court must conclude that one of the following three conditions is met: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test"). *NBC, Inc. v. Communications Workers of America,* 860 F.2d 1022, 1026–27 (11th Cir.1988).

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001).

Murphy's complaint does not plausibly indicate that any of the three foregoing conditions are met for considering Thomas to be a "state actor" liable under § 1983.

Accordingly, the § 1983 claims against Thomas are due to be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

## F.     Section 1985 Claims

Title 42 U.S.C. § 1985(3) was enacted by the Ku Klux Klan Act of 1871. *See Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996).

> The elements of a cause of action under § 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Lucero v. Operation Rescue,* 954 F.2d 624, 627 (11th Cir. 1992). The second element "requires a showing of some 'racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' " *Id.* at 628 (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 829, 103 S. Ct. 3352, 3356, 77 L. Ed. 2d 1049 (1983)); *see also Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269, 113 S. Ct. 753, 759, 122 L. Ed. 2d 34 (1993) (holding that whatever the precise meaning of "class" may be, it "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.").

*Id.* at 1146–47.[7] The Eleventh Circuit has "repeatedly … declined to extend [§ 1985(3) to apply in non-racial contexts." *Childree*, 92 F.3d at 1147. Instead, "[t]wo types of classes come within § 1985(3)'s protection: (1) classes having common characteristics of an inherent nature—i.e., those kinds of classes offered special protection under the

---

[7] Neither of § 1985's other two subsections applies to Murphy's claims in this action. Section 1985(1) applies only to interfering with the duties of federal officers, while § 1985(2) applies only to interfering with federal court proceedings.

equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act." *Id. See also Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (per curiam) ("Concerns that § 1985 might be interpreted into a general federal tort law led to the requirement that the conspiracy be motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.' " (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 97, 91 S. Ct. 1790, 1796, 29 L. Ed. 2d 338 (1971)). Murphy's complaint does not allege that he is a member of a protected class, and is devoid of any allegations plausibly suggesting that any of the Defendants' actions were motivated by racial or some other class-based discriminatory animus. *See Taylor v. Pekerol*, 760 F. App'x 647, 654 (11th Cir. 2019) (per curiam) (unpublished) ("[A]s for his claims concerning his detention by the state, Taylor's § 1985 claims fail because he did not allege that the purpose of the agents' actions was motivated by any discriminatory animus." (citing *Childree*, 92 F.3d at 1147)); *Chen ex rel. V.D. v. Lester*, 364 F. App'x 531, 536 (11th Cir. 2010) (per curiam) (unpublished) ("[A] plaintiff must show that the defendants were motivated by racial or class-based 'invidiously discriminatory animus.' *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 338 (1971) … Because Plaintiffs failed to allege that they are members of a protected class or that the defendants were motivated by racial or class-based 'invidiously discriminatory animus,' Plaintiffs' § 1985 claims must fail.")

Murphy also fails to plausibly allege the existence of a conspiracy. Here, the crux of Murphy's claims is that Thomas submitted a false Petition for Protection from

Abuse. However, Murphy has alleged no reasonably specific, non-conclusory facts suggesting that any of the other defendants conspired with Thomas in this regard. Indeed, Murphy fails to allege anything suggesting that any other defendant should have been aware that information in Thomas's petition was purportedly false, or was doing anything inappropriate in acting on a duly-filed Petition for Protection from Abuse. *See generally* Ala. Code §§ 30-5-1 through 30-5-11 (procedures and other considerations governing protection from abuse orders). *See also Am. Dental Ass'n*, 605 F.3d at 1290 (11th Cir. 2010) ("courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer" (quotation omitted)). Murphy's conclusory assertions that the other defendants conspired with Thomas are the sort of "legal conclusions" that the Court is not required to accept when deciding whether a complaint states a claim on which relief can be granted. *Iqbal*, 556 U.S. at 679

Accordingly, and as an alternative to those defendants who are immune under absolute judicial immunity and/or the Eleventh Amendment, the § 1985 claims against all of the defendants are due to be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

## G.    Section 1986 Claims

"Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing

the commission of the same, neglects or refuses so to do.' 42 U.S.C. § 1986. Section 1986 claims are therefore derivative of § 1985 violations." *Park v. City of Atlanta*, 120 F.3d 1157, 1159–60 (11th Cir. 1997) (per curiam) (footnote omitted). Because Murphy has failed to plausibly allege a § 1985 claim, and as an alternative to those defendants who are immune under absolute judicial immunity and/or the Eleventh Amendment, the § 1986 claims against all of the defendants are also due to be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### H.    Criminal Claims against Thomas

In his amendment to his complaint, Murphy adds a number of claims based on federal criminal statutes – 18 U.S.C. §§ 1001, 1018, and 1038 – and Alabama criminal statutes – Ala. Code §§ 13A-10-101 through -104, and Ala. Code § 13A-11-11. "Criminal statutes generally do not provide a private cause of action." *Chen*, 364 F. App'x at 536 (citing *Love v. Delta Air Lines*, 310 F.3d 1347, 1352–53 (11th Cir. 2002)).[8] Neither 18 U.S.C. §§ 1001 nor 1018 expressly provide for a private cause of action, nor can one readily be inferred from those statutes. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone; in *Cort v. Ash*, 422 U.S. 66, 80, 95 S. Ct. 2080, 2089, 45 L.

---

[8]  To the extent Murphy is attempting to bring criminal charges against Thomas, that attempt fails, as it is well settled "in American jurisprudence [that] a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973).

Ed. 2d 26 (1975), for example, we refused to infer a private right of action from 'a bare criminal statute.' And we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions.*");* *Lee v. United States Agency for Int'l Dev.*, 859 F.3d 74, 78 (D.C. Cir. 2017) (per curiam) (§ 1001 does not create a private cause of action); *Whorton v. Cognitians, LLC*, No. 19-3488, 2019 WL 8917880, at *2 (6th Cir. Dec. 9, 2019) (per curiam) (§ 1018 does not provide a private right of action).[9]

While 18 U.S.C. § 1038 does expressly allow for civil penalties, it is only to recover "expenses incident to any emergency or investigative response to" "conduct with intent to convey false or misleading information" about certain circumstances, none of which are applicable in this action. 18 U.S.C. § 1038(b).[10] And regardless, "the text of 18 U.S.C. § 1038(b) does not provide an independent civil cause of action in favor of a private citizen. Rather, the civil action 'only exists as additional enforcement against a party who engages in a criminal violation of 18 U.S.C. §

---

[9] Moreover, 18 U.S.C. § 1001 applies only to misrepresentations made in federal, not state, government matters, and 18 U.S.C. § 1018 applies only to "a public officer or other person authorized by any law of the United States to make or give a certificate or other writing," which Thomas is not.

[10] Section 1038(b) states, in full: "Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title, section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), or section 46502, the second sentence of section 46504, section 46505 (b)(3) or (c), section 46506 if homicide or attempted homicide is involved, or section 60123(b) of title 49 is liable in a civil action to any party incurring expenses incident to any emergency or investigative response to that conduct, for those expenses."

1038(a)(1).' " *Grissom v. United States*, No. 7:19-CV-01884-LSC, 2020 WL 1083213, at *2 (N.D. Ala. Mar. 5, 2020) (Coogler, J.) (quoting *Johnson v. Working Am., Inc.*, No. 1:12 CV 1505, 2012 WL 3074775, at *3 (N.D. Ohio July 30, 2012) (Boyko, J.)). Accordingly, Murphy's claims against Thomas under 18 U.S.C. §§ 1001, 1018, and 1038 are due to be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

Similarly, Alabama recognizes that "[o]ne claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *Am. Auto. Ins. Co. v. McDonald*, 812 So. 2d 309, 311 (Ala. 2001); *Blockbuster, Inc. v. White*, 819 So. 2d 43, 44 (Ala. 2001). Nothing in Ala. Code §§ 13A-10-101 through -104 – criminalizing various forms of perjury – or Ala. Code § 13A-11-11 – criminalizing falsely reporting dangerous activity – even hints at a legislative intent to impose civil liability for a violation of those statutes. Accordingly, Murphy's claims against Thomas under in Ala. Code §§ 13A-10-101 through -104 and Ala. Code § 13A-11-11 are due to be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

## I.     Individual Capacity § 1983 Claims

Murphy's individual capacity § 1983 claims against Judge Deas and Clerk of Court Freeman appear to be premised on the claim that they conspired with Thomas to violate Murphy's federal rights.

A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in

the actual denial of some underlying constitutional right. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted). A plaintiff claiming a § 1983 conspiracy must prove the defendants "reached an understanding" to violate the plaintiff's constitutional rights. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir.1992) ("[T]he linchpin for conspiracy is agreement.").

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010).

Much like with his § 1985(3) claims, Murphy fails to allege any non-conclusory facts plausibly suggesting a conspiracy to violate his civil rights, or to indicate that Judge Deas and Clerk of Court Freeman were engaged in anything other than processing a run-of-the-mill Protection from Abuse Petition. Accordingly, Murphy's § claims against Judge Deas and Clerk of Court Freeman in their individual capacity are due to be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### J.    Supplemental Jurisdiction

Generally, "[i]n a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997). Here,

Murphy has not alleged subject matter jurisdiction based on diversity of citizenship under § 1332(a), and such jurisdiction appears to be lacking. Murphy has sued the State of Alabama, and "it is well established that a state is not a citizen of a state for the purpose of diversity jurisdiction under 28 U.S.C. § 1332." *Univ. of S. Ala.*, 168 F.3d at 412. Regardless, the record indicates that Murphy, Thomas, Judge Deas, and Clerk of Court Freeman are all Alabama citizens.

Murphy has alleged subject matter jurisdiction based on 28 U.S.C. §§ 1331 (granting jurisdiction over civil claims arising under the constitution and laws of the United States (i.e., federal questions)) and 28 U.S.C. § 1343 (granting jurisdiction over federal civil rights violations by state officials). While those statutes grant original jurisdiction over Murphy's federal claims, they do not do so for his state law claims. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, a district court "may decline to exercise supplemental jurisdiction … if … the district court has dismissed all claims over which it has original jurisdiction…" 28 U.S.C. § 1367(c)(3).

Should the Court adopt all of the undersigned's above recommendations, all of Murphy's federal claims will be dismissed. Where federal claims are dismissed prior to trial, the Eleventh Circuit has observed that dismissal of state law claims under § 1367(c)(3) is "strongly encouraged" or even "required" by Supreme Court precedent.

*Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999).

## K.    Leave to Amend

The general rule in this Circuit is, "[w]hen it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice." *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) (per curiam) (unpublished) (emphasis added) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.*"), overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (overruling Bank as to counseled parties)). "Dismissal with prejudice is proper … if the *pro se* plaintiff has indicated that he does not wish to amend his complaint or if a more carefully drafted complaint could not state a valid claim." *Id.*

Here, the undersigned finds a more carefully drafted complaint would not overcome:

1. the State of Alabama and the Marengo County Circuit Court's entitlement to Eleventh Amendment immunity on all claims,

2. Judge Deas and Clerk of Court Freeman's entitlement to Eleventh Amendment immunity in their official capacities on all claims except for prospective equitable relief,

3. Judge Deas's entitlement to absolute judicial immunity from all monetary

damages,

4. the fact that all defendants but Thomas cannot be held liable under § 1981,

5. the fact that Murphy is not entitled to bring a private cause of action under any of the criminal statutes cited.

Accordingly, leave to amend prior to dismissal should be denied for (1) all claims against the State of Alabama and the Marengo County Circuit Court; (2) all claims against Judge Deas except for official capacity claims for prospective equitable relief and individual capacity claims for equitable relief; (3) all claims against Clerk of Court Freeman in his official capacity except for prospective equitable relief; (4) the § 1981 claims against Freeman and Deas; and (5) the causes of action against Thomas based on criminal statutes. This will have the effect of dismissing the State of Alabama and the Marengo County Circuit Court entirely as parties to this action.

As for all remaining federal claims against Judge Deas, Clerk of Court Freeman, and Thomas, the undersigned finds that Murphy should be given an opportunity to amend his complaint to cure the deficiencies in those claims noted above.

### III. *Conclusion & Recommendation*

In accordance with the foregoing analysis, and pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(R), the undersigned **RECOMMENDS** the following:

1. that all claims against the State of Alabama, Marengo County Circuit Court, and Judge Deas and Clerk of Court Freeman in their official capacities, be

**DISMISSED without prejudice** under 28 U.S.C. § 1915(e)(2)(B)(iii) to the extent they seek monetary relief;

2.     that all claims against the State of Alabama, the Marengo County Circuit Court, and Judge Deas and Clerk of Court Freeman in their official capacities, be **DISMISSED without prejudice** under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted, to the extent they seek non-monetary relief;

3.     that all claims against Judge Deas in his individual capacity be **DISMISSED with prejudice** under § 1915(e)(2)(B)(iii), and that all federal claims against Judge Deas in his individual capacity seeking non-monetary relief alternatively be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted ;

4.     that all federal claims against Clerk of Court Freeman in his individual capacity be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted;

5.     that all federal claims, and all state law claims premised on criminal statutes, against Thomas be **DISMISSED** under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted;

6.     that the foregoing dismissal of claims be without prejudice to Murphy's ability to, within a reasonable time, file an amended complaint that addresses the aforementioned defects on the following claims:

a) federal claims for prospective equitable relief against Clerk of Court Freeman in his official capacity;

b) federal claims against Clerk of Court Freeman in his individual capacity, except for claims under 42 U.S.C. § 1981; and

c) all federal claims against Thomas except those based on criminal statutes;

and

7.    if Murphy fails to file an amended complaint within the time allowed, that the Court decline to continue exercising supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c)(3) and dismiss those claims without prejudice, and enter final judgment accordingly under Federal Rule of Civil Procedure 58.

**DONE** this the 6th day of November 2020.

/s/Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.